UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 11-23695-CIV-ROSENBAUM

JB RECYCLING GROUP, INC.,

      Plaintiff,

v.

LANDMARK AMERICAN
INSURANCE COMPANY,

      Defendant.
_____/

## ORDER

This matter is before the Court upon Defendant's Motion for Final Summary Judgment [D.E. 20; D.E. 21]. The Court has reviewed Defendant's Motion for Summary Judgment, all filings in support thereof, and the record in this case. For the reasons that follow, the Court grants Defendant's Motion for Summary Judgment.

### *I.  Background*

This case arises out of an insurance dispute. According to the Complaint [D.E. 1-2], on August 10, 2010, Plaintiff JB Recycling Group, Inc. ("JB"),[1] was performing mulching work on its real property in Parkland, Florida. *Id.* at ¶ 5. During this operation, JB's mulching machine caught fire and released fuels and other fluids onto the finished products, mulch, and real property. *Id.* at ¶ 6. Subsequently, JB filed a claim with Defendant Landmark American Insurance Company ("Landmark"), which Landmark denied. *Id.* at ¶ 9.

---

[1] The Complaint actually refers to "JB Grinding." Nothing in the Complaint or elsewhere in the record, however, indicates that JB Grinding is not a part of Plaintiff JB Recycling Group, Inc.

Thereafter, JB filed the instant case in state court, and Landmark removed it to this Court. *See* D.E. 1. On June 15, 2012, Landmark filed the pending Motion for Summary Judgment [D.E. 21]. When JB failed to respond, the Court issued an Order to Show Cause Why Defendant's Motion for Summary Judgment Should Not Be Granted [D.E. 25]. In that Order to Show Cause, the Court directed JB to "show cause in writing by no later than **July 13, 2012**, why Defendant's Motion for Final Summary Judgment should not be granted." *See id.* (emphasis in original). The Order further cautioned, "Failure to file a timely response may result in the granting of Defendant's Motion for Final Summary Judgment." *Id.* Although July 13, 2012, came and went, JB did not respond. Indeed, to date, JB has not responded. Therefore, the Court now independently evaluates Defendant's Motion for Final Summary Judgment.

## *II. Summary Judgment Standard*

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Not any factual dispute will defeat a motion for summary judgment; rather, "the requirement is that there be no *genuine* issue of *material* fact." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (emphasis in original). An issue is genuine if "a reasonable trier of fact could return judgment for the non-moving party." *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1243 (11th Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)). A fact is material if it "might affect the outcome of the suit under the governing law . . . ." *Id.* (quoting *Anderson*, 477 U.S. at 247-48).

On a motion for summary judgment, the Court views the evidence, including all reasonable inferences drawn from it, in the light most favorable to the non-moving party and resolves all

reasonable doubts against the movant.  *Lee v. Ferraro*, 284 F.3d 1188 (11th Cir. 2002); *Johnson v. City of Mobile*, 321 F. App'x 826, 830 (11th Cir. 2009).  The Court does not weigh conflicting evidence.  *Skop v. City of Atlanta*, 485 F.3d 1130, 1140 (11th Cir. 2007), *reh'g and reh'g en banc denied*, 254 F. App'x 803 (11th Cir. 2007).  Thus, upon discovering a genuine material dispute, the Court promptly must deny summary judgment.  *Id.*

The moving party shoulders the initial burden of showing the absence of a genuine issue of material fact.  *Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir. 2008).  Once the moving party satisfies this burden, "the nonmoving party 'must do more than simply show that there is some metaphysical doubt as to the material facts.'"  *Ray v. Equifax Info. Servs., L.L.C.*, 327 F. App'x 819, 825 (11th Cir. 2009) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).  Instead, "the non-moving party 'must make a sufficient showing on each essential element of the case for which he has the burden of proof.'"  *Id.*  (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).  Accordingly, the non-moving party must produce evidence, going beyond the pleadings, and by his own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts suggesting that a reasonable jury could find in his favor.  *Shiver*, 549 F.3d at 1343.

Local Rule 7.5, S.D. Fla., further factors into this Court's consideration of a motion for summary judgment.  Under Local Rule 7.5, a moving party must submit "a concise statement of the material facts as to which the movant contends there exists no genuine issue to be tried."  S.D. Fla. L.R. 7.5(a).  The rules require this statement to be supported by "specific references to [evidence] on file with the Court" and to contain separately numbered paragraphs.  S.D. Fla. L.R. 7.5(c)(2) & (3).

In response, an opposing party bears the burden of filing "a single concise statement of the material facts as to which it is contended that there exists a genuine issue to be tried." S.D. Fla. L.R. 7.5(b). This statement must "correspond with the order and with the paragraph numbering scheme used by the movant . . . ." S.D. Fla. L.R. 7.5(c). In addition, to the extent that the opposing party contends more material facts exist, the opposing party must number such facts and place them at the end of its statement contesting the moving party's alleged uncontroverted material facts. *Id.* The Local Rules expressly caution, "All material facts set forth in the movant's statement filed and supported as required by Local Rule 7.5(c) will be deemed admitted unless controverted by the opposing party's statement, provided that the Court finds that the movant's statement is supported by evidence in the record." S.D. Fla. L.R. 7.5(d). As the comments to Local Rule 7.5 explain, "the Court will not grant summary judgment unless supported by a review of evidence in the record." 2005 comment to S.D. Fla. L.R. 7.5 (citing *United States v. One Piece of Real Prop. Located at 5800 S.W. 74th Ave., Miami, Fla.*, 363 F.3d 1099, 1103 n.6 (11th Cir. 2004) ("*One Piece of Real Prop.*").

Even where an opposing party neglects to submit any alleged material facts in controversy, the court must still satisfy itself that the evidence of record supports the movant's proposed material uncontroverted facts. *[check this] Reese v. Herbert*, 527 F.3d 1253, 1268-69 (11th Cir. 2008). In other words, Rule 7.5 "is not itself a vehicle for making factual assertions that are otherwise unsupported in the record." *Id.* (quoting *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 74 (2d Cir. 2001) (quotation marks omitted) and citing *Mariani-Colon*, 511 F.3d at 219 n.1). Rather, "after deeming the movant's statement of undisputed facts to be admitted pursuant to [the Local Rules], the district court must then review the movant's citations to the record to 'determine if there is, indeed, no genuine issue of material fact.'" *Id.* at 1269 (quoting *One Piece of Real Prop.*, 363 F.3d at 1101-02

(citation omitted)). To be clear, regardless of the opposing party's failure to cite to evidentiary support, the court must nonetheless consider *all* evidentiary materials in the record when determining whether a movant's contention that its statement of uncontroverted material facts is, in fact, not genuinely disputable based on the record evidence. *See id.* at 1270-71 (citing *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 998 (11th Cir. 1992); *Tippens v. Celotex Corp.*, 805 F.2d 949, 952 (11th Cir. 1986)); *see also id.* at 1272 (holding that the district court "erred by failing to review the full record on summary judgment . . . ," even though the opposing party did not comply entirely with the local rule).

With this framework in mind, the Court turns to the pending Motion. Here, Landmark's Motion for Summary Judgment follows the dictates of Local Rule 7.5, S.D. Fla. JB, however, has failed entirely to respond to the Motion for Summary Judgment, despite the Court's Order directing Plaintiff to show cause in writing why Defendant's Motion for Summary should not be granted. *See* D.E. 25. Thus, under Local Rule 7.5, S.D. Fla., the Court deems admitted all of Landmark's proposed undisputed material facts that are supported by evidence of record. In conducting this analysis, the Court carefully reviews all evidence submitted by Landmark to determine whether it supports each of the proposed undisputed material facts. After completing this process, the Court finds the following material facts.

### *III. Material Facts*

A. The Relevant Insurance Policy

Landmark issued a commercial general liability insurance policy to JB that was in effect from

May 6, 2010, through May 6, 2011 (the "Policy").  *See* D.E. 21-1 at 1.[2]  As relevant to this action, the Policy included the following provisions:

> **SECTION I - COVERAGES**
>
> **COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**
>
> 1.  **Insuring Agreement**
>
>     a.  We will pay those sums that the "Insured" becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the "Insured" against any "suit" seeking those damages.  However, we have no duty to defend any "Insured" against a "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. . . .

D.E. 21-1 at 29.  The declarations sheet of the Policy specifically states that "[c]ommercial [p]roperty" of JB is "NOT COVERED."  *See* D.E. 21-1 at 2.

> 2.  **Exclusions**
>
>     This insurance does not apply to:
>
>     * * * * *
>
>     j.  **Damage to Property**
>
>         "Property damage" to:
>
>         **(1)**.  Property you own, rent or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair,

---

[2]Some docket entries have two page-numbering systems resulting in different page numbers on the same page: the page number of the original document and the page number imprinted across the top of the page by the Court's CM/ECF system.  This Order refers to the page numbers left by the Court's CM/ECF system.

> replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;
>
> * * * * *
>
> k.  **Damage to Your Product**
>
> "Property damage" to "your work" arising out of it or any part of it.

D.E. 21-1 at 29-33.

In addition, the Policy includes an Exclusions and Limitations Amendatory Endorsement, GBA 106060 (01/08) ("Endorsement"), which modifies the insurance provided under the commercial general liability coverage form. *See* 21-6. Section G of the Endorsement replaces Exclusion 2(f) (Pollution) of the commercial general liability coverage form with the following exclusion:

> f.  Pollution:
>
> (1)  "Bodily injury" or "property damage" which would not have occurred in whole or in part but for the actual, alleged or threatened discharge, dispersal, seepage, mitigation, release or escape of "pollutants" at any time.
>
> (2)  Any loss, cost or expense arising out of any:
>
> (a)  Request, demand or order or statutory or others [sic] test for, monitor, clean up, remove, contain, treat, detoxify, or neutralize, or in any way respond to, or assess the effects of, "pollutants":

D.E. 21-6 at 2-3. Section H of the Endorsement replaces the definition of "pollutants" as set forth in the commercial general liability coverage form with this language:

> 15. "Pollutants" mean any solid, liquid, gaseous or thermal irritant, contaminant or toxin, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

*Id.* at 3.

B. The Claim

On approximately August 21, 2010, while JB was engaging in mulching operations on its property, JB's mulching excavator "caught fire and released fuel and other operating fluids onto the finished products, mulch and real property." *See* D.E. 1-2 at ¶¶ 5-6. Based on this incident, JB submitted a claim under the Policy for the following losses:

1. $87,800 to replace the excavator;
2. $72,000 in lost mulch;
3. $12,000 to transport the mulch to a Sarasota landfill;
4. $210,000 to transport mulch to Miami;
5. $7,170 dump charge for the load to Sarasota;
6. $1,129,800 dump charge for the load to Miami;
7. $1,500 in "additional employee charges";
8. $1,321.12 for additional fuel; and
9. $545.45 to recharge the fire extinguisher.

D.E. 20-4; D.E. 20-3; D.E. 1-2 at ¶ 8. Landmark issued a letter to JB denying coverage for the August 21, 2010, loss, based on the terms, conditions, exclusions, and endorsements set forth in the Policy. *See* D.E. 21-5.

C. The Lawsuit

On August 2, 2011, following the denial of its claim, JB filed this action against Landmark in Miami-Dade County Circuit Court. *See* D.E. 1-2. Landmark thereafter removed the matter to this Court, invoking diversity jurisdiction. *See* D.E. 1.

Count I of the Complaint asserts an action for breach of contract, alleging that "at a time

when the [Policy] was in full force and effect[,] Plaintiff's rental equipment and finished products were destroyed due to fire and operation fluid damage." D.E. 1-2 at ¶ 11. JB further contends in Count I that it suffered damages as a result of losing its mulching equipment, finished products, and mulch stored on premises; that it was further required to investigate, excavate, and transport damaged and contaminated fill to an appropriate dumping facility; and that it incurred additional expenses of inspection, investigation, remediation, monitoring, and other expenses associated with the removal of contaminated products. *See* D.E. 2-1 at ¶ 14.

Count II of the Complaint is a claim for declaratory judgment. In that count, JB asks the Court to declare that "the fire, release of operating fluids, and damages to products and real property be declared a compensable event under the policy" and that the Court "award the full amount of coverage in damages" to JB. *See* D.E. 2-1 at ¶ 20.

Nowhere in its Complaint does JB allege that a third-party claim has been filed against it, that it has been sued, or that it has become legally obligated to pay damages as a result of the incident that occurred on August 21, 2010. In other words, JB seeks coverage under the Policy for first-party damages incurred, not damages resulting from JB's liability to a third party.

## *IV. Discussion*

Florida law governs construction of the insurance policy at issue. In consulting Florida's laws, the Court first considers rulings of Florida's Supreme Court. *See Bailey v. S. Pac. Transp. Co.*, 613 F.2d 1385, 1388 (5th Cir.), *cert. denied*, 449 U.S. 836 (1980). Where the highest court in the state has rendered no decisions on point, this Court must follow the opinions of Florida's intermediate courts, unless it is "convinced that the highest court would decide otherwise." *Id.*

(citing *Comm'r v. Bosch*, 387 U.S. 456, 465 (1967)).[3]

Under Florida law, "[t]he intent of the parties to the contract should govern the construction of a contract." *Am. Home Assurance Co. v. Larkin Gen. Hosp., Ltd.*, 593 So. 2d 195, 197 (Fla. 1992) (citation omitted). Courts determine the intent of the parties by considering the language in the contract, the subject matter of the contract, and the object and purpose of the contract. *Id.* (citation omitted). In interpreting insurance policies, "courts should read each policy as a whole, endeavoring to give every provision its full meaning and operative effect." *Auto-Owners Ins. Co. v. Anderson*, 756 So. 2d 29, 34 (Fla. 2000) (citation omitted). But in so doing, courts construe coverage provisions "in the broadest possible manner to effect the greatest extent of coverage." *Westmoreland v. Lumbermens Mut. Cas. Co.*, 704 So. 2d 176, 179 (Fla. 4th DCA 1997) (citing *Hudson v. Prudential Prop. & Cas. Ins. Co.*, 450 So.2d 565, 568 (Fla. 2d DCA 1984); *Nat'l Merchandise Co. v. United Serv. Auto. Ass'n*, 400 So. 2d 526, 532 (Fla. 1st DCA 1981); *Valdes v. Smalley*, 303 So. 2d 342, 344 (Fla. 3d DCA 1974); *Hartnett v. S. Ins. Co.*, 181 So. 2d 524, 528 (Fla. 1965)).

A.  The Policy Does Not Provide First-party Property Coverage for the Damages Sustained

Here, Landmark contends that it is entitled to summary judgment because the Policy does not provide coverage for any part of the claim that JB filed with Landmark. More specifically, Landmark points to the declarations sheet of the Policy, which states that "[c]ommercial [p]roperty" of JB is "NOT COVERED." *See* D.E. 21-1 at 2. Landmark further refers to Section I(1.)(a.) of the Policy, which specifies that Landmark "will pay those sums that [JB] becomes legally obligated to

---

[3] Pursuant to *Bonner v. Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), opinions of the Fifth Circuit issued prior to October 1, 1981, are binding precedent in the Eleventh Circuit.

pay as damages because of . . . 'property damage' to which this insurance applies." *Id.* at 29.

As Landmark notes, the "primary purpose" of the type of commercial general liability insurance policy that JB had with Landmark is to protect companies such as JB "from third-party liability incurred as a result of that company's business operations." *See* D.E. 21 at 8 (citing *Colony Ins. Co. v. Montecito Renaissance, Inc.*, 2011 WL 4529948, *1 n.1 (M.D. Fla. Sept. 30, 2011)); *Key Custom Homes, Inc. v. Mid-Continent Cas. Co.*, 450 F. Supp. 2d 1311, 1317 (M.D. Fla. 2006)). "Such policies are not meant to serve as first-party insurance; thus, in addition to other exclusions, coverage is generally not available to pay for damage to property that the company owns, and/or to compensate a company to repair its own defective work." *Colony Ins. Co.*, 2011 4529948 at *1 n.1. Nor is this a case where the exception for a contractor who seeks to invoke coverage for property damage caused by a subcontractor may apply. *See United States Fire Ins. Co. v. J.S.U.B., Inc.*, 979 So. 2d 871, 894-996 (Fla. 2007) (Lewis, C.J., concurring).

Thus, JB's Policy with Landmark is not a first-party commercial-property insurance policy that covers JB's machinery, equipment, business property, personal property, or loss of business income stemming from problems with its machinery and other equipment. As a result, there is no coverage for any of the economic losses that JB sustained because of the August 21, 2010, incident involving JB's own equipment performing tasks for and by JB's business on JB's property. Because the damages that JB claims are not covered by the Policy, summary judgment must be granted for Landmark on Counts I and II of the Complaint.

B.  Even if JB's Commercial Property Were Covered, the Damages Incurred are Excluded

Even if the declarations sheet of the Policy did not negate coverage for JB's commercial property, the exclusions contained in the Policy would preclude coverage of JB's claim. In this

regard, the Policy excludes coverage for "[p]roperty damage" to "[p]roperty [JB] own[s], rent[s] or occup[ies], including any costs or expenses incurred by [JB] . . . for repair, replacement, . . . restoration or maintenance of such property for any reason . . . ." *See* D.E. 21-1 at 32. Under the language of the Policy, at the very least, the $87,800 for replacing the excavator, which JB incurred as a result of the August 21, 2010, occurrence, falls into this excluded category.

Similarly, the Policy's exclusion for damage to JB's product precludes coverage for "'[p]roperty damage' to [JB's product] arising out of [JB's product]. D.E. 21-1 at 33. JB's "product," in turn, is defined, in relevant part, as "[a]ny goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by: (a) [JB]; (b) Others trading under [JB's] name." *Id.* at 43. Because of this exclusion, JB's claim for $72,000 in mulch, which is JB's "product," as defined under the Policy, is not viable since the language of the Policy excludes coverage for it. *See Aetna Cas. & Surety Co. of Am. v. Deluxe Sys., Inc.*, 711 So. 2d 1293, 1296-97 (Fla. 4th DCA 1989) (citations omitted).

JB's claims for "the costs of investigation, inspection, excavation, removal, transport of contaminated materials from the jobsite, and remediation" likewise cannot succeed under the terms of the Policy. The "pollution" exclusion precludes coverage for "'property damage' which would not have occurred in whole or in part but for the actual, alleged or threatened discharge, dispersal, seepage, mitigation, release or escape of 'pollutants' at any time" and for "[a]ny loss, cost or expense arising out of any: (1) [r]equest, demand or order or statutory or regulatory requirement that any insured . . . clean up, remove, contain, treat, detoxify, or neutralize, or in any way respond to . . . the effects of, 'pollutants.'" D.E. 20-6 at 2-3. The Policy endorsement defines "pollutants" as "any solid, liquid, gaseous or thermal irritant, contaminant or toxin, including smoke, vapor, soot, fumes,

acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed." *Id.* at 3.

Here, the "fuels and other operating fluids," as alleged in Count I of the Complaint, operate as "pollutants," as a result of their discharge, and trigger application of the pollution exclusion contained in the Policy. Consequently, coverage for any damages arising out of the release of fuels and other operating fluids — including transportation costs, remediation costs, dumping charges, additional employee charges, fuel expenses, and the costs of recharging the fire extinguisher incurred as a result of efforts to clean up the mess created by the discharge of the fuel and other operating fluids — is precluded, and summary judgment must be granted for Landmark.

## *CONCLUSION*

For the foregoing reasons, the Court **GRANTS** Defendant's Motion for Summary Judgment [D.E. 20; D.E. 21]. Final judgment shall be entered by separate order.

**DONE** and **ORDERED** at Fort Lauderdale, Florida this 15th day of August 2012.

ROBIN S. ROSENBAUM
UNITED STATES DISTRICT JUDGE

copies:

Counsel of Record